U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR - 7 2013

CLERK, U.S. DISTRICT COURT
By_____
          Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ROBERT TANSEY,                    §
                                  §
          Plaintiff,              §
                                  §
VS.                               §   NO. 4:12-CV-550-A
                                  §
PAT McGRAIL AND                   §
JEFFRY SALOMONE,                  §
                                  §
          Defendants.             §

MEMORANDUM OPINION
and
ORDER

The above-captioned action, in which the plaintiff is Robert
Tansey, and defendants are Pat McGrail ("McGrail") and Jeffry
Salomone ("Salomone"), has been transferred to the docket of the
undersigned.  Now pending is the motion to dismiss plaintiff's
complaint for failure to state a claim, filed by McGrail.
Plaintiff, proceeding pro se, filed a document entitled, "Motion
to Deny Dismissal of Case," which the court interprets as a
response to McGrail's motion, and McGrail filed a reply.  Having
considered all relevant filings and applicable authorities, the
court concludes that the complaint should be dismissed in its
entirety against both defendants for reasons discussed below.

I.

## Background

Plaintiff initiated this action by filing his original complaint on July 27, 2012, in the Dallas Division of this court. The action was subsequently transferred to the Fort Worth Division, and assigned to the docket of the Honorable Terry R. Means, who granted McGrail's motion to transfer the action to the docket of the undersigned.  Previously, plaintiff filed a nearly identical lawsuit in the Dallas Division of this court, which was then transferred to the Fort Worth Division and assigned to the docket of the undersigned, <u>Tansey v. City of Keller</u>, No. 4:12-CV-387-A.  In that action, on June 15, 2012, this court dismissed all claims and causes of action asserted by plaintiff against the defendant, City of Keller ("City"), with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

A.   Prior Lawsuit

In his complaint in the prior lawsuit, plaintiff made the following factual allegations:[1]

In the fall of 2007, plaintiff and a friend were at plaintiff's home in City listening to music and drinking beer, with plaintiff's patio doors open.  A song came on called "China

---

[1] The summary of plaintiff's factual allegations is taken from the court's June 15, 2012 memorandum order and opinion dismissing plaintiff's complaint in the prior lawsuit.

2

White," which describes a "pure grade of heroin."  Pl.'s Compl.

at 2.  "Shortly after" this occasion, two of City's plainclothes

detectives told a reference librarian at City's library that

plaintiff "was 'the biggest drug dealer in NE Tarrant County,

what's he does [sic] here so much?'."  Id. at 3.

On an unspecified occasion one of plaintiff's neighbors

called him a "drug seller" from across the yard, and in the

spring of 2010 another accused him of being responsible for the

death of a teenage resident of City who died of a heroin

overdose.  In May 2010 one of plaintiff's coworkers told him that

the coworker's son-in-law was with City's police force, and

"[t]hey know what's in your house, and want to get to it."  Id.

At an unknown time plaintiff placed an ad for a roommate

using City's library computer.  An individual named Ronald Lowe

("Lowe") answered the ad.  Lowe claimed to be a "a detective

working on a $110 million deal, of which he was to get 10%."  Id.

at 4.  The Complaint alleged various mysterious events that

occurred which plaintiff believed were connected to Lowe, such as

Lowe giving a fictitious employment address, appearing at

plaintiff's house before knowing the address, plaintiff coming

home to find his "Zero Halliburton aluminum attache case on his

bed, with its 22 [inch] tightly fitted hinge pin protruding,"

id., and signs of apparent entry into plaintiff's attic.  Lowe

3

also suggested that plaintiff could use his printer and computer to counterfeit money if he was short on cash.

At some point plaintiff realized he had a virus on his computer; plaintiff unknowingly spread the virus to the computer systems of two employers, causing him to lose his jobs.  Although he searched on City library computers for ways to remove the virus, he was unable to find any such information, although such can be found on other computers.  City's information technology personnel denied installing filtering software on the library's computers.  Later, plaintiff took his laptop computer to City's library where he intended to use a software program he purchased to remove viruses.  While at the library he overheard someone say "don't let the laptop boot here; it will infect the library systems."  Id. at 6.  Plaintiff was then unable to start his computer, although he was subsequently able to start it at home.  Soon thereafter plaintiff overheard his neighbors talking about someone not having internet access or security.

In summer of 2009 plaintiff returned home and found his "concrete pond drained, killing his prized Koi."  Id. at 7.  The pond was drained "to find the alleged cache of China White heroin."  Id.  On two unspecified occasions the alarms in plaintiff's cars went off at 2:00 a.m.  Plaintiff found the

garage door open, and a trail seemed to indicate that a person was heading in the direction of a neighbor's house.

On an unspecified occasion plaintiff's ex-wife reported seeing someone moving from plaintiff's deck to the back yard. That evening, upon returning home, plaintiff found a bag of what appeared to be marijuana in his home. On another occasion plaintiff purchased a software package containing a "3.5 [inch] floppy disk." Id. at 8. Upon returning from work the next day, plaintiff found the box was missing the floppy disk.

On another unspecified occasion plaintiff's ex-wife told plaintiff that the ex-wife's niece wanted to see him. When plaintiff arrived at the niece's apartment, his ex-wife told him that her new laptop, which she received from her employer, had to be plugged in to a wall outlet to access the internet, and that her internet service provider told her all laptops operated that way. Plaintiff called the internet provider; its employees denied making such a statement.

Plaintiff often saw City police cars at City's library when he was there; the police cars left when plaintiff did. When plaintiff was there after dark the police cars "would turn on high beams to illuminate and temporarily blind [plaintiff] as he walked across" the parking lot. Id. at 9.

5

Plaintiff began working at another company in Irving, Texas. An employee of the company told plaintiff that the employee's friend could remotely access the company's computer network. Minutes later, plaintiff saw one of his neighbors on the employer's premises, and plaintiff was immediately terminated.

In June 2008 plaintiff purchased a converter box to allow his analog television to receive digital signals.  Shortly thereafter, plaintiff noticed interference with the signal. Plaintiff "detect[ed] the interference by shielding the antennae from the westerly source of the interference."  Id. at 10. Plaintiff then went into his back yard and noticed a "strange metal booth ha[d] been hastily constructed on the rear" of a neighbor's garage, with a window-type opening that faced the rear of plaintiff's house.  Id.  Plaintiff noticed he could not "use his cell phone while in his back yard, and TV interference [was] becoming stronger, making all stations unwatchable."  Id.

Plaintiff called and sent facsimiles to the Federal Communications Commission to have them "investigate the nuisance transmissions emanating" from the structure attached to the neighbor's garage.  Id. at 11.  Plaintiff also contacted a local television station, which sent a team to plaintiff's home.  "The transmissions stopped when engineers arrived."  Id.

Plaintiff contacted City Hall regarding the "energy nuisance transmissions." Id.  The City employee he spoke to told him to contact City's police department, which plaintiff did.  The police department employee told him there was no law against the "nuisance RF energy transmitting device" in his neighbor's garage.  Id.  Plaintiff then sent emails to City's mayor, "demanding a stop to the RF energy transmissions." Id. at 12. Plaintiff realized that all the birds and squirrels had disappeared from his yard, and that his dogs would also no longer venture into the back yard.  Plaintiff began to notice physical symptoms when he neared the boundary of his yard and the neighbor's metal booth attached to the garage, include feeling disoriented, having bloody diarrhea, and "severe painful eye problems." Id. at 13.

Plaintiff pleaded with City's mayor to stop the transmissions.  Plaintiff later received an email from a City police officer, telling plaintiff that the mayor had instructed the officer to meet with plaintiff about the "harmful RF energy" transmissions and that City "would do anything it could, that it had control over." Id.

Plaintiff then received an email from the officer that "state[d] he ha[d] issued a warrant for [plaintiff's] arrest, as [plaintiff] had texted [plaintiff's] wife to find out information

7

about the home we shared for a decade." _Id._  Plaintiff met with the officer and requested the police department's assistance "in stopping the electronic harassment." _Id._  Plaintiff suggested the officer obtain electric bills for the neighbor "using the transmitter." _Id._ at 14.  Plaintiff received an email from the officer saying plaintiff needed "a Mental Health Exam," which plaintiff agreed to if the officer would submit to a polygraph test. _Id._  Plaintiff attempted to obtain copies of the email exchanges between him and the officer, but the emails had been deleted.

Plaintiff alleged a cause of action against City for illegal search and seizure that stated, in pertinent part:

> 4.3   Criminal actions were commenced against Plaintiff Name by the Keller Police Department working on behalf of and at the direction of Keller City Mayor and Administration personnel.
>
> 4.4   Plaintiff's [] persecution was initiated or procured by City of Keller personnel.
>    a.   [Plaintiff] was innocent;
>
>    b.   [City] acted without probable cause;
>    c.   [City] acted with malice in slandering and harassing [plaintiff], planting an agent, [Lowe], to engage in unlawful search activities to bypass Constitution [sic] rights against illegal and unreasonable searches.
>    d.   [City] damaged [plaintiff's] name.

Id. at 14-15.  Plaintiff also alleged a cause of action pursuant
to 42 U.S.C. § 1983 for violations of his rights under the Fifth
and Fourteenth Amendments.

B.   Current Lawsuit

     Plaintiff alleges virtually identical facts and asserts the
same two causes of action as he did in his prior lawsuit.  The
only differences the court can discern are (1) the names and
descriptions of the defendants; (2) minor changes to dates or
additions of dates; (3) further description of the Keller Public
Library's computer programs; (4) further description of
Salomone's "microwave energy focused at Plaintiff's residence,"
Compl. at 13; and (5) other small changes, such as the addition
of "McGrail is policy maker as mayor" to the end of paragraphs.

II.

Analysis

A.   Standard of Review

     Rule 8(a)(2) of the Federal Rules of Civil Procedure
provides, in a general way, the applicable standard of pleading.
It requires that a complaint contain "a short and plain statement
of the claim showing that the pleader is entitled to relief,"
Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair
notice of what the claim is and the grounds upon which it rests,
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal

9

quotation marks and ellipsis omitted).  Although a complaint need

not contain detailed factual allegations, the "showing"

contemplated by Rule 8 requires the plaintiff to do more than

simply allege legal conclusions or recite the elements of a cause

of action.   Id. at 555 & n.3.  Thus, while a court must accept

all of the factual allegations in the complaint as true, it need

not credit bare legal conclusions that are unsupported by any

factual underpinnings.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009) ("While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations.")

     Moreover, to survive a motion to dismiss for failure to

state a claim under Rule 12(b)(6), the facts pleaded must allow

the court to infer that the plaintiff's right to relief is

plausible.  Id. at 678.  To allege a plausible right to relief,

the facts pleaded must suggest liability; allegations that are

merely consistent with unlawful conduct are insufficient.

Twombly, 550 U.S. at 566-69.  "Determining whether a complaint

states a plausible claim for relief . . . [is] a context-specific

task that requires the reviewing court to draw on its judicial

experience and common sense."  Iqbal, 556 U.S. at 679.

     The court has the inherent authority to dismiss a complaint

on its own motion for failure to state a claim.  See Carroll v.

Fort James Corp., 470 F.3d 1171, 1176-77 (5th Cir. 2006); Shawnee

Int'l, N.V. v. Hondo Drilling Co., 742 F.2d 234, 236 (5th Cir.
1984).  The Fifth Circuit has held that a district court can
dismiss an action sua sponte as long as the procedure employed is
fair, and has suggested that fairness in this context involves
notice of the court's intention to dismiss and an opportunity to
respond.  Lozano v. Ocwen Fed. Bank, FSB, 489 F.3d 636, 643 (5th
Cir. 2007).  However, even if the court fails to provide notice
to the plaintiff prior to dismissing the action, the dismissal is
appropriate if the plaintiff has alleged his "best case" and
dismissal is otherwise proper.  Id.  "At some point a court must
decide that a plaintiff has had a fair opportunity to make his
case; if, after that time, a cause of action has not been
established, the court should finally dismiss the suit."  Jacquez
v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986).

     Dismissal under Rule 12(b)(6) on res judicata grounds is
appropriate when the elements of res judicata are apparent on the
face of the pleadings.  See Kan. Reinsurance Co. v. Mortg. Corp.
of Tex., 20 F.3d 1362, 1366 (5th Cir. 1994).  In ruling on such a
motion, "[t]he court may consider documents attached to or
incorporated in the complaint and matters of which judicial
notice may be taken."  United States ex rel. Willard v. Humana
Health Plan of Tex. Inc., 336 F.3d 375, 379 (5th Cir. 2003); In
addition, the court may take judicial notice of the record in a

11

prior related proceeding over which it presided, and may dismiss a complaint sua sponte under principles of res judicata.   Arizona v. California, 530 U.S. 392, 412 (2000) ("[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action sua sponte, even though the defense has not been raised.").   Dismissal is proper when a plaintiff's complaint conclusively establishes the affirmative defense of res judicata, even if a defendant has not raised the defense, when both actions were brought in the same district.   Carbonell v. La. Dep't of Health & Human Res., 772 F.2d 185, 189 (5th Cir. 1985).

B.   Application of the Standards to Plaintiff's Complaint

In McGrail's motion, he argues that all of plaintiff's claims against him are barred by principles of res judicata and collateral estoppel, and that plaintiff's complaint fails to state a claim upon which relief may be granted.   Salomone, proceeding pro se, has not filed a motion to dismiss plaintiff's claims, but has raised the issue of plaintiff's prior lawsuit in his answer, apparently as a defense to this lawsuit.   The court concludes that plaintiff's claims against both defendants should be dismissed for failure to state a claim upon which relief may be granted, or, alternatively, because the claims are barred by principles of res judicata.

1.   <u>Failure to State a Claim</u>

Proceeding on the basis of the information before the court in plaintiffs' amended complaint, the court finds that plaintiffs' allegations for all claims against both defendants fall short of the pleading standards and should be dismissed.  It appears from the complaint that plaintiff is suing McGrail in his official capacity as mayor and policymaker for City.  Plaintiff also appears to be trying to sue Salomone in an official capacity, as plaintiff alleges that Salomone is an "agent of Policy maker," although there is no indication that Salomone is employed by McGrail or City.  Compl. at 1-2.

As far as plaintiff's claims against McGrail as policymaker, it is well-settled that a lawsuit against a city policymaker in his official capacity is the equivalent of a lawsuit against that city.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985); <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 n.55 (1978) (Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent.").  Liability may be imposed against a local government entity under § 1983 only "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1359 (2011) (quoting <u>Monell</u>, 436 U.S.

at 692) (internal quotation marks omitted).  Thus, for McGrail to be liable under § 1983, plaintiff must allege "that an official policy or custom was a cause in fact of the deprivation of rights inflicted." Spiller v. City of Texas City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997).

Plaintiff makes the same allegations against McGrail in this lawsuit that he made against City in his prior lawsuit, and his case fares no better this time around.  Plaintiff seems to believe that by substituting McGrail for City, and identifying McGrail as a policymaker, he can now state a claim for relief under § 1983.  However, simply because plaintiff has now named a policymaker does not mean his allegations show a plausible right to relief, as plaintiff has pleaded no facts that can be construed to allege the violation of a constitutional right by anyone.  Plaintiff makes a variety of speculative and conclusory accusations against an assortment of individuals, and he alleges no facts to support any of his accusations.  Nowhere does he identify or describe an unlawful policy; the complaint is devoid of allegations of any official policy or "violation of constitutional rights whose 'moving force' is the policy or custom." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).  Thus, plaintiff's claims against McGrail should be dismissed.

14

Plaintiff's claims against Salomone are not cognizable.   To
state a cause of action under § 1983, a plaintiff "must allege
that the person who deprived him of a federal right was acting
under color of law."   Priester v. Lowndes Cnty., 354 F.3d 414,
420 (5th Cir. 2004).   A private citizen such as Salomone may be
held liable under § 1983 only if he was a "willful participant in
joint activity with the State or its agents."   Cinel v. Connick,
15 F.3d 1338, 1342 (5th Cir. 1994).   A plaintiff must allege: (1)
an agreement between the private and public defendants to commit
an illegal act, and (2) a deprivation of constitutional rights.
Id.   Plaintiff fails to allege either, and his claims against
Salomone should be dismissed.

Plaintiff has had sufficient opportunity to make his "best
case."   He filed an original complaint and two amended complaints
in the prior lawsuit, and filed a complaint in this lawsuit that
is essentially another amended complaint from the prior lawsuit.
The court therefore sees no reason to allow plaintiff to further
amend his complaint, and concludes that dismissal is proper.

    2.   Res Judicata

Even if the complaint had stated a claim against defendants,
the doctrine of res judicata precludes the relitigation of claims
which have been fully adjudicated or arise from the same subject
matter, and that could have been litigated in the prior action.

15

<u>Nilsen v. City of Moss Point</u>, 701 F.2d 556, 561 (5th Cir. 1983).

Under <u>res judicata</u>, a prior judgment bars a subsequent judgment

when (1) the parties are identical or in privity; (2) the

judgment in the prior action was rendered by a court of competent

jurisdiction; (3) the prior action was concluded by a final

judgment on the merits; and (4) the same claim or cause of action

was involved in both actions.  <u>Test Masters Educ. Servs., Inc. v.</u>

<u>Singh</u>, 428 F.3d 559, 571 (5th Cir. 2005).  McGrail argues in his

motion to dismiss that all of the elements of <u>res judicata</u> are

met, and plaintiff's claims against him are barred.  The court

agrees, and also concludes that all claims against Salomone are

barred by <u>res judicata</u>.

    1.   <u>The Parties</u>

To satisfy the identity element of <u>res judicata</u>, strict

identity of parties is not required; all that is necessary is the

existence of privity between the prior defendant and current

defendant.  <u>Russell v. SunAmerica Secs., Inc.</u>, 962 F.2d 1169,

1172-73 (5th Cir. 1992).  For purposes of <u>res judicata</u>, privity

is simply the "legal conclusion that the relationship between the

[parties are] sufficiently close to afford application of the

principle of preclusion."  <u>Vasquez v. Bridgestone/Firestone,</u>

<u>Inc.</u>, 325 F.3d 665, 677 (5th Cir. 2003).  Parties are considered

to be in privity when they share an identity of interests in the

"basic legal right that is the subject of litigation."  In re
Erlewine, 349 F.3d 205, 210 (5th Cir. 2003).

Defendant McGrail is clearly in privity with City, as
McGrail is the mayor of City and plaintiff accuses McGrail of
being City's policymaker in charge of orchestrating City's
violations of plaintiff's constitutional rights.  Defendant
Salomone does not appear to be employed by City or otherwise have
a relationship with City; however, plaintiff has accused Salomone
as being an "agent" of McGrail and City, and carrying out
violations of plaintiff's rights in his role as such an agent.
Thus, the court concludes that McGrail and Salomone share an
identity of interests with City sufficient for privity between
the parties to exist, and the identity element is satisfied.

   2.   Prior Judgment Rendered in Court of Competent
        Jurisdiction

The prior judgment was rendered by this court, in Tansey v.
City of Keller, No. 4:12-CV-387-A (June 15, 2012).  Thus, there
is no question that the prior judgment was rendered by a court of
competent jurisdiction.

   3.   Final Judgment on the Merits

Plaintiff's complaint in the prior litigation was dismissed
with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of
Civil Procedure, and final judgment was entered on the same day.

A dismissal pursuant to Rule 12(b)(6) with prejudice is a final judgment on the merits and has preclusive effect under res judicata.  See Oreck Direct, LLC v. Dyson, 560 F.3d 398, 401 (5th Cir. 2009).

    4.   Same Causes of Action

To determine if two cases involve the same cause of action, the court looks to whether the two lawsuits are based on the same nucleus of operative facts.  Agrilectic Power Partners, Ltd. v. Gen. Elec. Co., 20 F.3d 663, 665 (5th Cir. 1994); Cisco Sys., Inc. v. Alcatel USA, Inc., 301 F. Supp. 2d 599, 602 (E.D. Tex. 2004).  A comparison of plaintiff's complaint from this action with his complaint from the prior action show that the two complaints are virtually identical, and the court can discern no differences whatsoever, except for the distinctions described supra, part I.B.  Plaintiff asserts the exact same causes of action, based on the same facts, that he asserted in the prior lawsuit: (1) illegal search and seizure of his residence and belongings; and (2) violations of his Fifth and Fourteenth Amendment rights under 42 U.S.C. § 1983.  It is readily apparent that plaintiff is attempting to relitigate the same claims and causes of action that this court has already deemed meritless and dismissed with prejudice.  Therefore, plaintiff is barred from

pursuing these claims under the doctrine of res judicata, and his complaint must be dismissed.

### III.

### Order.

Therefore,

The court ORDERS that McGrail's motion to dismiss for failure to state a claim upon which relief may be granted be, and is hereby, granted.

The court further ORDERS that all claims and causes of action brought by plaintiff, Robert Tansey, against defendants, Pat McGrail and Jeffry Salamone, be, and are hereby, dismissed with prejudice.

The court further ORDERS that any other pending motions in this action be, and are hereby, denied as moot.

SIGNED March 7, 2013.

JOHN McBRYDE
United States District Judge